# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-CR-0071-CVE |
| | ) | (08-CV-0110-CVE-FHM) |
| | ) | |
| BILLY JOE HILL, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On February 1, 2008, defendant Billy Joe Hill, a federal prisoner appearing pro se, filed a

Motion for New Trial and Reconsideration on Newly Discovered Evidence and Supporting Evidence

(Dkt. # 164). The Court advised defendant that it would treat his motion as a motion to vacate, set

aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. # 167. Section 2255 provides that "a

prisoner in custody under sentence of a court established by Act of Congress claiming the right to

be released upon the ground that the sentence was imposed in violation of the Constitution or law

of the United States . . . may move the court which imposed the sentence to vacate, set aside or

correct the sentence." The Court notified defendant that his deadline to file a § 2255 motion would

expire on February 20, 2008, and that he had to file a § 2255 motion raising all of his claims before

that date or his claims would be time barred. Defendant filed a § 2255 motion (Dkt. # 169) raising

30 claims.[1]

---

[1]     Defendant's § 2255 motion states that he is raising 31 separate grounds for relief. However, his motion skips from claim four to claim six and there is no claim five. Although he numbers his claims from one to thirty-one, he has alleged thirty claims only.

# I.

On May 7, 2003, a federal grand jury indicted defendant on charges of possessing a firearm after former felony conviction in violation of 18 U.S.C. § 922(g)(1) (Count One), and making a false statement to obtain a firearm in violation of § 922(a)(6) (Count Two).  Dkt. # 1.  The charges stemmed from defendant's alleged delivery of a shotgun to a pawn shop on April 30, 2002, and his subsequent attempt to redeem the shotgun from the pawn shop on May 25, 2002.  A superseding indictment was returned on August 13, 2003, alleging a second count of possessing a firearm after former felony conviction (Count Three).  Dkt. # 2.  Count Three concerned defendant's alleged possession of a different shotgun on October 30, 2001.  Defendant was in state custody and he was transferred to federal custody pursuant to a writ of habeas corpus ad prosequendum.  Dkt. ## 8, 9.

Defendant made his initial appearance on September 8, 2003, and the Court appointed Steven Hightower to represent defendant.  Dkt. # 11.  The government filed a motion to detain defendant pending trial and he was held in temporary detention until his detention hearing set for September 15, 2003.  Defendant filed a motion to continue the detention hearing and waived his right to a detention hearing within five days of his initial appearance.  Dkt. # 16.  Magistrate Judge Paul J. Cleary granted defendant's motion to continue and reset the detention hearing for September 23, 2003.  Defendant also requested a 30 day extension of all deadlines in the scheduling order, and the Court granted his motion.  Dkt. # 19.  On September 23, 2003, defendant requested a second continuance of his detention hearing and the matter was passed.  On September 26, 2003, the magistrate judge held a detention hearing and found that defendant should be detained pending trial.  Dkt. # 24.

2

On November 13, 2003, defendant filed a motion to continue the jury trial set for December 15, 2003, and the trial was reset for January 20, 2004.  Hightower requested a status conference because defendant made it "absolutely clear that he does not want Steven Hightower as his lawyer." Dkt. # 29.  The Court set a status conference for December 8, 2003, and defendant appeared with Hightower at the hearing.  The Court permitted Hightower to withdraw from his representation of defendant and appointed a new attorney, Stephen Knorr, to represent defendant.  Dkt. # 31.  To provide defendant's new attorney adequate time to prepare for trial, the Court entered a new scheduling order extending all deadlines and resetting the jury trial for February 17, 2004.  Dkt. # 37.

Knorr requested a competency hearing for defendant, because he was concerned about defendant's "willingness or ability to effectively communicate with counsel and to work with an attorney who was there to help him."  Dkt. # 39, at 2.  The Court referred defendant to the Federal Medical Center of the Federal Bureau of Prisons for a competency evaluation and set an in-court competency hearing for May 10, 2004. Dkt. ## 44, 45.  After reviewing the written recommendation and questioning defendant, the Court found that defendant was competent to stand trial.  Dkt. # 49. However, defendant requested a new attorney and Knorr confirmed that defendant was unwilling, but not unable, to work with an attorney.  The Court agreed to appoint a new attorney for defendant, but advised him that no further requests for new counsel would be granted.  Then-assistant Federal Public Defender Julia O'Connell was appointed as defendant's new attorney and Knorr was permitted to withdraw.  Dkt. # 51.  Defendant filed another motion to continue the jury trial, which was granted at the pretrial conference (Dkt. # 57).  The trial was reset for August 16, 2004.  Dkt. # 61.

Defendant filed a motion to suppress evidence obtained following a traffic stop of his vehicle on October 30, 2001 (Dkt. # 62), and a motion to sever the trial of Counts One and Two from the trial of Count Three (Dkt. # 63). The Court set both motions for hearing on September 3, 2004. Dkt. # 73. The Court denied defendant's motion to sever, because joinder of the claims for one trial was proper and defendant would not suffer any prejudice from joinder. Dkt. # 145, at 5-6. As to the motion to suppress, the government argued that police had probable cause to search defendant's vehicle under the automobile exception to the warrant requirement of the Fourth Amendment and that the inevitable discovery exception to the exclusionary rule applied.

The government called Tulsa Police Department (TPD) Officer Chad Moyer to testify. Moyer testified that he was asked to backup another police officer, TPD Officer Brad Sherill, who was investigating a tip that a man was seen carrying a shotgun out of Marv's Nightclub in Tulsa, Oklahoma on October 30, 2001. Moyer interviewed a security guard at Marv's Nightclub, who stated that he observed a man leave the club and put a shotgun in a vehicle. Id. at 12. After talking to the security guard, Moyer parked across the street from the club and waited for the vehicle to leave. Moyer saw the vehicle leave the parking lot and recognized the driver from previous contacts with him. Moyer had stopped defendant several times for driving with a suspended license. Moyer also had personal knowledge that defendant was a convicted felon. Id. at 18-19. Moyer checked the status of defendant's driver's license using TPD's teletype system, and confirmed that defendant's driver's license was suspended. Moyer initiated a traffic stop and arrested defendant for driving with a suspended license. Moyer testified that he had received information from Sherill that defendant had contraband in the vehicle, and he determined he had probable cause to search the vehicle. Moyer searched the vehicle and found a shotgun in the trunk. Moyer testified that the

4

vehicle would have been towed following defendant's arrest, and the shotgun would have been found during an inventory search before the vehicle was towed. Id. at 23. The government was not prepared to present the testimony of Sherill on September 3, 2004, and the Court continued the hearing to allow the government to call Sherill as a witness.

On September 14, 2004, the Court reconvened the suppression hearing and the government called Sherill as a witness. Sherill testified that, on October 30, 2001, he received a call from a security guard at Marv's Nightclub around 1:15 a.m., and the security guard reported that he observed a man place a shotgun in a vehicle. Dkt. # 146, at 7. Sherill responded to the call and parked across the street from the club. He kept the club and the vehicle under surveillance using binoculars, and he observed a man and two women approach the vehicle. He saw the man remove something wrapped in a blanket from the back seat. The blanket slipped from the item and Sherill saw the barrel of a gun sticking out from underneath the blanket. The man put the blanket over the gun and quickly placed the gun in the trunk of the vehicle. Sherill had no doubt that the item he observed was a firearm. Id. at 9. Sherill notified other officers in the area, including Moyer, of what he had observed. Moyer conducted a traffic stop of defendant's vehicle and Sherill arrived while the traffic stop was in progress. Sherill described the search of defendant's vehicle as an inventory search, but he also testified that he had reason to believe that the vehicle contained a loaded firearm. During the search of defendant's vehicle, Sherill found a chamber loaded shotgun with an additional round in the magazine. Id. at 12.

The Court denied defendant's motion to suppress. Dkt. # 80. The Court found that Moyer had reasonable suspicion to believe that defendant was driving with a suspended license and that defendant had a firearm in his vehicle. Moyer had stopped defendant for driving with a suspended

license on several occasions, and he was able to identify defendant by sight. Id. at 4-5. Thus, the traffic stop of defendant's vehicle was lawful. The Court determined that Moyer had probable cause to believe that defendant was committing the crime of possession of a firearm after felony conviction, and that Moyer could search the vehicle under the automobile exception to the Warrant Clause of the Fourth Amendment of the United States Constitution. The Court also found that the inevitable discovery exception to the exclusionary rule would apply and, even if police had lacked probable cause to perform an automobile search, the shotgun would have been seized as part of an inventory search. Id. at 6-7.

O'Connell filed a motion to withdraw as defense counsel and stated that defendant intended to represent himself at trial. Dkt. # 82. Defendant also filed a motion to continue the jury trial set for September 20, 2004, because he had decided to represent himself and needed more time to prepare for trial. Dkt. # 81. On September 20, 2004, the Court held a sealed, ex parte hearing on O'Connell's motion to withdraw as defense counsel. O'Connell stated that defendant wanted her to present the testimony of defendant's wife, Clara Mulrain,[2] but she could not ethically comply with defendant's request. Defendant persisted in his request for defense counsel to call Mulrain as a witness at trial. O'Connell advised defendant that she could represent defendant without calling Mulrain as a witness or he could represent himself at trial. The Court took O'Connell's motion to withdraw under advisement, but reset the jury trial for October 20, 2004. Dkt. # 94. While the motion to withdraw was pending, O'Connell requested subpoenas to compel the attendance of witnesses at trial and continued to serve as defense counsel.

---

[2]     Defendant sometimes referred to Mulrain as Clara Mulrain Hill, but her legal name was Clara Mulrain.

On the day of trial, defendant confirmed that he intended to represent himself, and the Court appointed O'Connell as stand-by counsel.  O'Connell asked the Court to fully advise defendant of the risks of proceeding pro se to ensure that he was freely and voluntarily waiving his right to counsel.  Dkt. # 143, at 5.  Defendant claimed that O'Connell failed to investigate his case and that he had no choice but to represent himself.  Id. at 8.  However, he acknowledged the Court's advice concerning the risks of his choice and stated that he wished to represent himself.  Id. at 8-12.  O'Connell stated that the sole reason she could not represent defendant was an ethical conflict and she agreed to serve as standby counsel, even though it would be difficult.  A jury was selected and the parties made opening statements on the morning of October 20, 2004.  The parties stipulated that defendant had been convicted of a felony before he allegedly possessed a firearm, as charged in Counts One and Three of the superseding indictment.  Id. at 150.

The government's first witness was Sherill, and Sherill described the events leading up to defendant's arrest on October 30, 2001.  Defendant asked numerous questions as to the reliability of Sherill's observations before the traffic stop, but Sherill testified that he recognized defendant as the individual who placed the shotgun in the vehicle.  The government next called Moyer to testify about defendant's arrest and the search of his vehicle.  Defendant cross-examined Moyer about the reliability of his observations before the traffic stop and his basis for initiating the traffic stop.

Before the second day of trial, defendant informed that Court that he wanted to subpoena Jay Jones and Mike Collier as witnesses in his defense.  Jones was incarcerated in federal prison and defendant did not know how Jones could be located.  Dkt. # 144, at 230-31.  Standby counsel agreed that she would attempt to find out where Jones was imprisoned.  Collier was an employee of the Oklahoma Department of Public Safety, and the government agreed to provide defendant a phone

number for Collier.  Id. at 233-34.  The government called Suzanne Annette Lee, an assistant manager of Fast-Bucks Pawnworld, to testify about the pawn shop's business practices, especially concerning firearms, and defendant's business with the pawn shop.  Lee testified that defendant was a long-time customer of Fast-Bucks Pawnshop, and that he had cashed checks and had other transactions at the pawn shop.  Defendant pawned a Springfield, Model 67H, 12 gauge shotgun on April 30, 2002, and she personally observed defendant carrying the shotgun into the pawn shop. Defendant refinanced the shotgun several times, and the pawn shop retained the shotgun without putting it up for sale.  On May 25, 2002, defendant attempted to reacquire the shotgun from the pawn shop and filled out a background check form.  However, defendant represented that he had never been convicted of a felony or any other crime carrying a maximum sentence of greater than one year.  Id. at 265.  Lee testified that a person's application to purchase or reacquire a pawned firearm would ordinarily be denied if he had been convicted of a felony.  Lee also testified that Mulrain attempted to redeem the shotgun.  Lee did not recall that defendant filled out any paperwork to transfer ownership of the gun to Mulrain, although Lee did remember that Mulrain attempted to redeem the shotgun for defendant.  Id. at 307-10.  It was possible for defendant to transfer the right to redeem the shotgun to Mulrain if he completed a form and acknowledged that he would not receive the shotgun from Mulrain, but the pawn shop did not have such a form on file for defendant. Id. at 319.  Defendant asked several questions about Jay Jones' role in operating the pawn shop.  He established that Jones was the owner of the pawn shop, but that Jones did not participate in the transaction involving the shotgun pawned by defendant.  Following Lee's testimony, standby counsel advised the Court that defendant intended to call Tim Harris, the Tulsa County District Attorney, as a witness.  Id. at 327.  The Court expressed doubt that Harris was likely to offer any

relevant testimony, but stated that defendant could call Harris out of turn at the end of the day. However, defendant declined to call Harris as a witness before the government completed its case-in-chief.  Id. at 339.

Ina Sanchez, manager of Fast-Bucks Pawnworld, testified that defendant pawned a shotgun on April 30, 2002, and that he personally carried the shotgun into the store.  Id. at 341.  Defendant attempted to redeem the shotgun on May 25, 2002, and filled out a background check form indicating that he had not been convicted of a felony.  Defendant's application to redeem the shotgun was denied.  Id. at 349.  Sanchez affirmed on cross-examination that defendant entered the store on May 25, 2002 and filled out a background check form stating that he did not have any prior felony convictions.  Id. at 355-60.  Defendant signed over his pawn ticket to Mulrain and Mulrain attempted to redeem the shotgun.  Id. at 371.  Mulrain's application to redeem the shotgun was also denied due to her background check.  An agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) took possession of the shotgun around June or July 2002, but Sanchez could not remember the exact date.  Defendant continued to refinance the shotgun after it was claimed by ATF, even though the pawn shop no longer had the shotgun.

The government called ATF agent Billy Magalassi to testify at the beginning of the third day of trial.  Magalassi testified that the shotgun recovered from defendant's vehicle was manufactured in Westfield, Massachusetts sometime after 1968, and that it traveled in interstate commerce in order to reach Oklahoma.  He also identified the shotgun taken from the pawn shop as the same make and model as the shotgun recovered from defendant's vehicle, but it was manufactured between 1961 and 1968.  Dkt. # 139, at 2-9.  Before his cross-examination of Magalassi, defendant claimed that standby counsel was an obstacle to the presentation of his case, and he attempted to have her

removed as standby counsel. Id. at 11-14. The Court rejected defendant's claim that standby counsel was interfering with his defense, and directed her to remain as standby counsel. Id. at 15. Standby counsel informed the Court that Mulrain did not comply with a subpoena. Defendant claimed that standby counsel discouraged Mulrain from testifying at trial, and the Court agreed to conduct a hearing outside of the presence of the jury before Mulrain took the witness stand. Id. at 16. The Court later issued a bench warrant to ensure Mulrain's presence at trial. Id. at 51. Defendant cross-examined Magalassi about the manufacturing process for the make and model of shotgun he allegedly possessed, and attempted to show that the shotguns could have been manufactured somewhere other than Massachusetts, but Magalassi testified that he had visited the manufacturer's plant and believed that both shotguns were manufactured in Massachusetts. Id. at 19-22.

ATF agent Josh Petree testified that he test-fired both shotguns, and they were fully functional. Id. at 25-28. Petree was the ATF agent who initially submitted a report to the United States Attorney for the Northern District of Oklahoma recommending that charges be filed against defendant. Petree interviewed Sanchez about the shotgun that defendant pawned, and Sanchez told Petree that defendant personally delivered the shotgun to the pawn shop. Id. at 35. Petree took the shotgun from the pawn shop on July 8, 2002. Counsel for the government, Assistant United States Attorney Timothy Faerber (AUSA), asked the Court to interrupt defendant's cross-examination of Petree to advise defendant that some of his questions on cross-examination were likely to elicit specific information about defendant's criminal history, and the Court advised defendant to keep his questions "generic." Id. at 46-47. Defendant continued to cross-examine Petree about his

investigation and also attempted to show that the law concerning defendant's right to possess a firearm was unclear.

The government rested its case following Petree's testimony, and defendant moved for a judgment of acquittal. Id. at 74. The Court denied defendant's motion. Id. at 75. Defendant renewed his request to compel the attendance of Harris and Jones. The Court found that Harris's testimony was irrelevant and that defendant failed to make a timely request to ensure the attendance of Jones, a person in federal custody. Mulrain appeared in court without counsel and asked if her testimony could subject her to criminal charges. Id. at 81-82. The Court appointed an attorney from the Criminal Justice Act panel, Rick Dunn, to advise Mulrain about the risks associated with testifying at trial. The Court held a sealed, ex parte hearing with defendant, standby counsel, Mulrain, and Dunn, and Dunn advised Mulrain to invoke her Fifth Amendment right against self-incrimination as to any question other than her name. Id. at 86. Defendant chose not to call Mulrain as a witness. Id. at 89.

Defendant called Sherill as his only witness, and defendant questioned Sherill about the events of October 30, 2001. This testimony was consistent with Sherill's testimony at the suppression hearing. Defendant established that Sherill did not have an ideal view of defendant's vehicle before it left the parking lot of Marv's Nightclub. However, on redirect examination, Sherill positively identified defendant as the person who placed the shotgun in the vehicle and was arrested that night, because the person "had on a purple suit very similar to the one that [defendant was] wearing on, I believe it was Wednesday, and he also had a purple hat on." Id. at 107. Defendant completed his examination of Sherill and rested his case.

Defendant renewed his motion for judgment of acquittal, which was denied. Id. at 110-11. Defendant permitted standby counsel to represent him in the jury instruction conference, and standby counsel requested an instruction concerning the interstate commerce element of each charged offense different from the Court's draft of that instruction, which request was granted. Id. at 116. On October 25, 2004, the Court instructed the jury and the parties made closing arguments. The jury found defendant guilty of Counts One and Two, but could not reach a verdict on Count Three. Dkt. ## 105, 106. The government filed a motion to dismiss Count Three, which was granted. Defendant's sentencing hearing was set for January 27, 2005. On motion of defendant, the sentencing hearing was continued until April 27, 2005, and Stanley Monroe was appointed as defendant's attorney for the sentencing process.

Monroe filed an objection to the presentence investigation report (PSI) challenging, inter alia, the use of defendant's prior convictions to enhance defendant's sentence under the United States Sentencing Guidelines (Sentencing Guidelines) or the Armed Career Criminal Act, 18 U.S.C. § 924(e) (ACCA). Monroe asked the Court to continue the sentencing hearing, because he did not have time prior to the sentencing hearing to consult with defendant and consider whether additional objections to the PSI should be raised. Dkt. # 149, at 3-5. The sentencing hearing was reset for May 13, 2005. At the continued sentencing hearing, defendant argued that his nolo contendere plea for assault and battery in Cleveland County District Court, Oklahoma in 1988 should not be considered as a predicate offense under the ACCA, and that a jury should be required to determine if a prior conviction constitutes a violent felony under the ACCA. Dkt. # 150, at 2-4. The Court rejected both arguments. The charging document for the assault and battery charge alleged that defendant struck another person with metal handcuffs and "thereby did inflict serious wounds . . . with the unlawful

12

and felonious intent then and there to do bodily harm." Id. at 8.  Although defendant pled nolo contendere to the charged offense, the facts alleged in the charging document showed that the offense was a violent felony under the ACCA and defendant did not contest the facts alleged in the charging document.  Id. at 14-15.  Defendant also argued that he was convicted of robbery with a firearm in 1965, and that conviction was vacated in 1980 because defendant was improperly charged as an adult.  He claimed that the 1965 conviction tainted subsequent prosecutions of defendant for other, unrelated offenses.  Id. at 15-17.  The Court permitted the parties to file supplemental briefing on the effect of a vacated juvenile conviction on subsequent criminal history, and continued defendant's sentencing hearing until June 16, 2005.

On June 16, 2005, the Court sentenced defendant to 212 months imprisonment on Count One and 120 months imprisonment on Count Two, to run concurrently.  The Court rejected defendant's argument that his vacated 1965 conviction tainted any subsequent convictions, because he could not use a federal sentencing proceeding to collaterally attack the validity of prior state court convictions.  Dkt. # 151, at 9-10.  Defendant had three prior violent felonies and was subject to a sentencing enhancement under the ACCA.  The Sentencing Guidelines provided a sentencing range of 188 to 235 months, and defendant was sentenced to a term in the middle of the guideline range.  The government argued, and the Court agreed, that defendant's criminal history calculation undervalued defendant's prior criminal history, and a sentence in the middle of the guideline range was appropriate.  Id. at 40-41.

Defendant appealed his conviction and sentence to the Tenth Circuit Court of Appeals, and Monroe continued to serve as defendant's counsel on appeal.[3]  Defendant raised five arguments on

---

[3]    Even though Monroe represented defendant at the sentencing hearing and on appeal, the Court will refer to Monroe as "appellate counsel" throughout this Opinion and Order.

appeal: (1) the government did not present sufficient evidence to obtain a conviction on Count One; (2) defendant's conviction of Count One violated the Ex Post Facto Clause of the United States Constitution; (3) the district court prevented defendant from presenting Jones' testimony at trial; (4) the district court improperly instructed the jury as to Count Two; and (5) and defendant was not eligible for an enhanced sentence under the ACCA. Dkt. # 160, at 1. The Tenth Circuit affirmed defendant's conviction and sentence, and rejected all of defendant's arguments. Defendant filed a petition for writ of certiorari with the United States Supreme Court on January 8, 2007, and his petition was denied on February 20, 2007. See Dkt. ## 161, 162. Defendant filed a Motion for New Trial and Reconsideration on Newly Discovered and Supporting Evidence (Dkt. # 164) on February 1, 2008, and the Court advised defendant that it was treating his motion as a § 2255 motion.[4] Defendant was permitted to amend his motion to assert any additional claims that he wanted to raise in a § 2255 motion. Dkt. # 167.

Defendant filed a § 2255 motion on February 26, 2008, but he placed the motion in the prison mail system on February 15, 2008. Dkt. # 169-2, at 35. The Court will use the date that defendant placed the motion in the prison mail system when determining if his motion is timely. See Price v. Philpot, 420 F.3d 1158, 1164 (10th Cir. 2005) (extending prison mailbox rule to a criminal defendant's initial filing of a § 2255 motion). Defendant's conviction became final on February 20, 2007 when the Supreme Court denied his petition for a writ of certiorari. Clay v.

---

[4]    Defendant's "newly discovered evidence" relates solely to his arrest on October 30, 2001 (Count Three), and he claims that the Court erred by denying his motion to suppress. Dkt. # 164, at 1-5. However, defendant was acquitted on Count Three, and the charges of which he was actually convicted concerned subsequent, unrelated events in 2002. It is not clear how the "newly discovered evidence" relates to either Count One or Two. Defendant raises similar arguments in his § 2255 motion (Grounds 18, 20, 23, 24), and the Court will consider whether defendant is entitled to relief based on the alleged newly discovered evidence that his driver's license was not under suspension when he was arrested on October 30, 2001.

14

United States, 537 U.S. 522, 527 (2003).  Defendant filed his motion to vacate, set aside, or correct sentence pursuant to § 2255 on February 15, 2008.  Therefore, defendant's motion was filed within the one year statute of limitations provided by § 2255, and his motion is timely.

## II.

Defendant raises thirty grounds for relief, and many of his claims are based on his assertion that appellate counsel was ineffective for failing to raise certain issues during sentencing or on direct appeal.  Construing defendant's motion broadly, it appears that defendant is seeking relief on the following grounds:

(1)   Defendant had a right to bear arms under state law and the United States Constitution, and 18 U.S.C. § 922(g)(1) is unconstitutional.

(2)   Defendant's prior convictions should not have been used to enhance his sentence.

(3)   A prior conviction based on a nolo contendere plea should not have been considered when applying the ACCA.

(4)   The number of defendant's prior convictions that qualified as predicate offenses under the ACCA should have been determined by a jury rather than the Court.

(6)   The government relied on falsified or fraudulent documents to obtain an indictment from the Grand Jury.

(7)   The Court compelled defendant to proceed to trial without an attorney, because it would not appoint a new attorney to replace O'Connell.

(8)   Defendant did not receive a speedy trial.

(9)   The rifle possessed by defendant was a 43 year old hunting rifle, and the government did not prove that the rifle moved in interstate commerce before defendant possessed it.

(10)  The jury selection process was tainted and could not have resulted in the selection of a fair and impartial jury.

(11)  The use of an Old Chief stipulation violates defendant's right against self-incrimination under the Fifth Amendment to the United States Constitution.

15

(12)    The Court improperly considered an expunged conviction when applying the ACCA.

(13)    Defendant did not receive a fair trial, because he was denied the opportunity to call witnesses on his behalf or fully question witnesses.

(14)    The Court erred by accepting the jury's guilty verdict as to Count Two.

(15)    The Court should have severed the trial of Counts One and Two from the trial of Count Three.

(16)    The PSI contained unsubstantiated and inaccurate facts and the Court erred by relying on the PSI to sentence defendant.

(17)    Defendant should not have been compelled to use stand-by counsel at trial.

(18)    Defendant's convictions are "unconstitutional and void," because the government presented the false testimony of law enforcement officials at trial.

(19)    Appellate counsel failed to talk to defendant's stand-by counsel when drafting defendant's appellate brief.

(20)    The Court erred by denying his motion to suppress evidence obtained during the traffic stop of defendant's vehicle.

(21)    Court-appointed attorneys, including the three attorneys fired by defendant, were ineffective for failing to investigate the validity of defendant's prior convictions.

(22)    Standby counsel interfered with defendant's right to subpoena witnesses and present his case.

(23)    The government offered false evidence at trial and at the suppression hearing concerning the status of defendant's driver's license.

(24)    Defendant was deprived of a fair trial due to the admission of perjured testimony and other unreliable evidence.

(25)    The Court improperly relied on defendant's prior convictions and the advisory sentencing guidelines to increase defendant's sentence.

(26)    The Court prevented defendant from exercising his right to represent himself in a criminal proceeding by appointing standby counsel.

(27)    Neither the Court nor court-appointed counsel informed defendant of the possible mandatory minimum and maximum sentences on his firearm charges.

16

(28)    The Court compelled defendant to represent himself at trial and denied him the opportunity to subpoena witnesses for his defense.

(29)    The Court and standby counsel discouraged Mulrain from testifying at trial.

(30)    Enhancing defendant's sentence based on his prior convictions violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

(31)    The government failed to prove that the firearm moved in interstate commerce before defendant possessed it.

## A.

As a preliminary matter, the Court notes that many of defendant's arguments are vague, speculative, and repetitious.  Consistent with Supreme Court and Tenth Circuit precedent, the Court will construe defendant's pro se pleadings liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Gaines v. Stenseng, 292 F.3d 1222, 1224 (10th Cir. 2002).  "Although '[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers,' . . . 'pro se parties [must] follow the same rules of procedure that govern other litigants.'" Garrett v. Selby Connor Maddux & Janer, 425 F.3d 836, 840 (10th Cir. 2005) (quoting Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994)).  The Court has no obligation to construct legal arguments for defendant or fashion an argument for defendant if his motion is incoherent or unintelligible.  See United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994); Drake v. City of Fort Collins, 927 F.2d 1156, 1159 (10th Cir. 1991).

The government argues that defendant is procedurally barred from raising many of the claims alleged in his § 2255 motion because they were not raised on direct appeal.  Tenth Circuit precedent is clear that "[s]ection 2255 motions are not available to test the legality of matters which should have been raised on direct appeal."  United States v. Warner, 23 F.3d 287, 291 (10th Cir. 1994).

17

Criminal defendants may not use § 2255 motions as a substitute for a direct appeal, and failure to raise an issue at trial or on direct appeal creates a procedural bar. United States v. Cervini, 379 F.3d 987, 990 (10th Cir. 2004); United States v. Barajas-Diaz, 313 F.3d 1242, 1245 (10th Cir. 2002). Procedural default can be excused if defendant can show that cause and prejudice exist to excuse the default or that a fundamental miscarriage of justice has occurred. Barajas-Diaz, 313 F.3d at 1247. Although the Court must construe defendant's pleadings liberally, defendant bears the burden to show cause and prejudice or that a fundamental miscarriage of justice requires a court to excuse his procedural default. George v. Perrill, 62 F.3d 333, 335 (10th Cir. 1995).

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

18

probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).  In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment significance."  Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance.  See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

## B.

Defendant has alleged 30 grounds for relief, and many of the claims are based on alleged ineffective assistance of counsel.  Defendant elected to proceed pro se at trial, but he was represented by counsel at his sentencing hearing and on appeal.  The Court infers that defendant is challenging the performance of appellate counsel for failing to raise certain issues on appeal.  To the extent that defendant alleges certain arguments should have been raised on appeal, the Court must consider the merits of the omitted issue.  United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995).  "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'"  Id. The Court has grouped defendant's claims into several categories for organizational purposes, but the Court has reviewed and ruled upon each of defendant's claims individually.

The Court Compelled Him to Proceed without Counsel (Grounds 7, 13, 17, 22, 26, 28)

Defendant asserts (Ground 7) that he was compelled to proceed pro se based on the Court's rulings and counsel's refusal to investigate his case or raise certain arguments.  Defendant also argues that the Court deprived him of the right to proceed pro se by requiring him to have standby counsel.  The government responds that the Court conducted a hearing to determine if defendant

understood his right to proceed without counsel and defendant knowingly and voluntarily waived his right to counsel. The government also argues that defendant's attorney withdrew because she believed that it would be unethical to raise certain arguments, and it was not improper to allow her to withdraw before trial.

A criminal defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution. However, a defendant has a constitutional right to proceed without counsel and conduct his own defense. Faretta v. California, 422 U.S. 806 (1975); United States v. DeShazer, 554 F.3d 1281, 1288-89 (10th Cir. 2009). The defendant must "clearly and unequivocally" state his intention to proceed without counsel in a timely manner, and the Court must determine if the defendant's waiver of his right to counsel is knowing, voluntary, and intelligent. United States v. Floyd, 81 F.3d 1517, 1527 (10th Cir. 1996); United States v. Treff, 924 F.2d 975 (10th Cir. 1991). "Ideally, the trial judge should conduct a thorough and comprehensive formal inquiry of the defendant on the record to demonstrate that the defendant is aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risk of proceeding *pro se*." United States v. Hughes, 191 F.3d 1317, 1323 (10th Cir. 1999).

In this case, O'Connell filed a motion to withdraw and the Court held a sealed, ex parte hearing on O'Connell's motion. The Court took the motion under advisement and held a second hearing on O'Connell's motion before jury selection. O'Connell asked the Court to conduct a thorough colloquy with defendant before accepting his request to proceed without counsel. Dkt. # 143, at 5. Defendant stated that he felt like he had "no choice" but to proceed pro se, and this prompted the Court ask numerous questions about the voluntariness of his decision. Id. at 6.

20

Defendant stated that O'Connell had not conducted an adequate investigation and she refused to present certain evidence at trial.  Defense counsel confirmed that she could not in good conscience represent defendant at trial due to an ethical conflict.  The Court advised defendant of difficulties that may be caused by his lack of understanding of the substantive law and rules of evidence if he represented himself.  Defendant acknowledged his lack of expertise in the law, but persisted with his request to proceed pro se.  Id. at 9-10.  Defendant stated several times that he wanted to proceed pro se due to counsel's lack of preparation, and O'Connell responded that she fully understood the case but could not represent defendant for ethical reasons.  O'Connell stated that she could communicate with the defendant and assist him during the trial, and agreed to serve as standby counsel.  Id. at 12-13.  The Court found that defendant's decision to proceed with counsel was knowing, voluntary, and intelligent, and granted O'Connell's motion to withdraw.  Defendant faced a choice between two options, both of which were fully explained to him.  Defendant could have proceeded to trial with counsel and declined to present certain evidence that his attorney could not ethically offer at trial, or he could represent himself.  Defendant knowingly, voluntarily, and intelligently selected the second option.  Defendant argues that appellate counsel was ineffective for failing to challenge the Court's decision to grant O'Connell's motion to withdraw and for failing to appoint a new attorney for him.  Dkt. # 169, at 9.  However, the Court finds that defendant fully understood his rights and chose to represent himself.  Therefore, appellate counsel was not ineffective for failing to raise this meritless issue (Ground 7) on appeal.

In Ground 13, defendant claims that he was compelled to proceed pro se, which deprived him of the right to call witnesses at trial.  Defendant asserts that he would have called Jay Jones, Tim Harris, Mike Collier, and an unidentified handwriting expert, but he could not subpoena witnesses

without the assistance of counsel.  Defendant's decision to represent himself at trial did not impair his right to subpoena witnesses.  Even if defendant had attempted to subpoena these witness, he does not explain how their testimony would have been relevant.  The Court made a finding on the record that neither Harris nor Jones would offer any relevant testimony, and defendant does not make a proffer of the relevance of Collier's or the unidentified handwriting expert's testimony.  The Tenth Circuit rejected defendant's argument that the Court improperly prevented him from calling Jones at trial, and defendant is procedurally barred from relitigating this issue.  Dkt. # 160, at 5.  To the extent that defendant is challenging the denial of his request to call Harris, Collier, and the unidentified handwriting expert, this issue is meritless and appellate counsel was not ineffective for failing to raise this issue on appeal.

Defendant argues (Ground 17) that the Court erred by failing to remove standby counsel because this deprived him of his constitutional right to represent himself during a criminal trial.  A court may appoint standby counsel for a pro se defendant, even over the defendant's objection, as long as the defendant is permitted to maintain control over his own defense without hindrance from standby counsel.  See Faretta, 422 U.S. at 834 n.46; McCaskle v. Wiggins, 465 U.S. 168, 177-78 (1984).  The Tenth Circuit has expressed a preference for district courts to appoint standby counsel for pro se criminal defendants, although this is not a mandatory practice.  United States v. Padilla, 819 F.2d 952, 959 (10th Cir. 1987).  In this case, defendant clearly maintained control over his own defense and standby counsel did not interfere with defendant's right to represent himself.  In fact, defendant occasionally consulted standby counsel and used standby counsel to carry documents to the Court or witnesses during argument or cross-examination.  The Court's decision to appoint standby counsel did not interfere with defendant's Sixth Amendment right to represent himself

22

during a criminal trial, and appellate counsel was not ineffective for failing to raise this meritless claim on direct appeal.

Defendant argues (Ground 22) that the Court compelled him to proceed pro se and refused to appoint him another attorney, and this deprived him of the right to call his Mulrain as a witness. He claims that his wife was prepared to testify on his behalf, but the Court intimidated her by appointing counsel to discuss with her the consequences of testifying.  However, defendant's argument is not supported by the trial transcript.  When the government rested its case and defendant was prepared to call his first witness, Mulrain asked the Court if she could be charged with a crime if she testified.  Dkt. # 139, at 82.  The AUSA asked if Mulrain would like to consult an attorney, and the Court held a sealed, ex parte hearing after Mulrain was permitted to talk to an attorney.  Id. at 83-85.  Mulrain's attorney, Dunn, informed the Court that he had advised Mulrain to assert her Fifth Amendment privilege against self-incrimination if she were called to testify.  Id. at 86. Defendant spoke to Mulrain and her attorney, and he chose not to call her as a witness.  Id. at 87. After reviewing the transcript, the Court finds that defendant's decision to represent himself did not prevent him from calling Mulrain as a witness.  Defendant was presented with a choice of calling Mulrain as a witness, with the knowledge that she would assert her Fifth Amendment privilege, or of not calling her to testify.  He chose the second option, and these are the same two options he would have had if he were represented by counsel.  Defendant raised this issue on direct appeal, and the Tenth Circuit rejected this argument.  Dkt. # 160, at 5 n.1.  Thus, appellate counsel did raise this issue and the Tenth Circuit ruled against defendant, and defendant is procedurally barred from raising this issue in a § 2255 motion.

Although Ground 26 is extremely vague, it appears that defendant is challenging the Court's decision to appoint standby counsel and is reasserting his claim that standby counsel interfered with his right to present witnesses at trial.  In Ground 28, defendant reasserts his argument that he was compelled to proceed pro se and this deprived him of the right to call witnesses in his defense. These arguments have already been considered and rejected, and will not be addressed again.  To the extent that defendant may have some other argument hidden within Grounds 26 or 28, the Court has no obligation to construct legal arguments for defendant or fashion an argument for defendant if his motion is incoherent or unintelligible.  See Fisher, 38 F.3d at 1147.  The Court declines to fashion additional arguments for defendant, and Grounds 26 and 28 are denied as repetitious and vague.

The Court Lacked Subject Matter Jurisdiction (Grounds 1, 2, 6, 31)

Defendant argues (Ground 1) that the Court lacked subject matter jurisdiction to hear his case, because defendant's civil rights had been restored under Oklahoma law and the federal government may not punish him for possessing a firearm when he was allegedly permitted to possess a weapon under state law.  Defendant states that he was released from prison and claims that his civil rights, including his right to possess a firearm, were automatically restored.  The Tenth Circuit has rejected this argument and has found that Oklahoma does not automatically restore all civil rights upon a convicted felon's release from prison.  Fisher, 38 F.3d at 1146-47.  Therefore, defendant could be prosecuted under § 922(g) for being a convicted felon in possession of a firearm, even though he had been released from prison for his prior Oklahoma convictions.  Defendant also cites United States v. Lopez, 514 U.S. 549 (1995), and he may be challenging the validity of § 922(g) under the Commerce Clause of the United States Constitution.  The Tenth Circuit has

expressly rejected facial and "as applied" challenges to the constitutionality of § 922(g) under the Commerce Clause, and defendant's Commerce Clause challenge is meritless. See United States v. Urbano, 563 F.3d 1150, 1154-55 (10th Cir. 2009). Defendant's constitutional challenges to his conviction, even if properly raised in a § 2255 motion, are foreclosed by existing Tenth Circuit precedent and appellate counsel was not ineffective for raising these meritless arguments on appeal.

Defendant claims (Ground 2) that the Court erred by accepting the PSI, because the PSI determined the applicability of the ACCA and defendant's criminal history category using state convictions that could not be used to enhance his sentence as a matter of state law. As the Court has noted, defendant's civil rights were not automatically restored upon his release from prison, and the mere fact that he served his prior sentences did not prevent the Court from considering his prior convictions as predicate offenses under the ACCA. Defendant generally cites the United States Constitution as a basis to invalidate the ACCA, but it is unclear if he is asserting any particular argument. Based on defendant's arguments, the most likely constitutional challenges to the ACCA would be the Cruel and Unusual Punishment or Ex Post Facto Clauses of the United States Constitution. The Tenth Circuit has upheld the constitutionality of the ACCA against both types of challenges. See United States v. Angelos, 433 F.3d 738 (10th Cir. 2006) (enhanced sentence under the ACCA for possession of a firearm after former felony conviction did not violate the Eighth Amendment); United States v. Springfield, 337 F.3d 1175 (10th Cir. 2003) ("there is no ex post facto problem in using a prior conviction to enhance a sentence, so long as the offense for which the sentence is being imposed was committed after the effective date of the statutory provision setting forth the condition for enhancement"). The Court can discern no other possible constitutional

challenges to the ACCA in Ground 2, and defendant's constitutional challenges to the ACCA are meritless.

Defendant claims (Ground 6) that the government presented false or misleading evidence to the grand jury concerning his prior convictions and the indictment should have been dismissed. Defendant also reasserts his argument that his civil rights were automatically restored upon his release from prison, and the Court lacked subject matter jurisdiction to convict him for illegally possessing a firearm based on his prior convictions. The Court has already considered and rejected defendant's argument that his civil rights, including his right to own a firearm, were automatically restored when he was released from prison. The government acted within its power to seek an indictment for possession of a firearm after former felony conviction based on defendant's prior convictions, and defendant's conclusory allegations that he was not guilty of the charges underlying his prior convictions or that the convictions were invalid for an unspecified legal defect do not show that the AUSA presented false or misleading evidence to the grand jury. The Court also notes that defendant challenged the validity of several of his prior convictions at his sentencing hearing and on appeal, and this argument is procedurally barred due to prior adjudication of this argument on direct appeal. Defendant's claim that the government presented misleading evidence of prior convictions to the grand jury is meritless.

Defendant appears to be arguing (Ground 31) that the Court lacked subject matter jurisdiction because his crime did not involve interstate commerce.[5]  He claims that the firearm he was convicted of possessing did not cross state lines and was manufactured before § 922(g)(1) was enacted, and the federal government had no authority to prosecute him under the Commerce Clause. Defendant's conclusory allegations do not establish that the federal government lacked authority to prosecute him.  As a general matter, no firearms or ammunition are manufactured in Oklahoma, and defendant has not made any showing suggesting that the firearm he was convicted of possessing was manufactured in Oklahoma.  The government presented evidence at trial showing that the particular firearm did travel in interstate commerce and that the defendant possessed the firearm after § 922(g) was enacted.  Defendant may not attack the validity of his conviction with nothing more than conclusory allegations that the firearm did not cross state lines before defendant possessed it.[6]  The government presented credible evidence that the shotgun moved in interstate commerce before it was possessed by defendant, and defendant's argument is not supported by the record.  The Tenth Circuit also rejected defendant's argument that the Court lacked subject matter jurisdiction because

---

[5]     Defendant also argues that the Sentencing Guidelines penalize a criminal defendant for exercising his right to trial by giving a defendant who pleads not guilty a reduced sentence for acceptance of responsibility.  He claims that a defendant who exercises his right to trial is penalized with a higher sentence.  The Tenth Circuit has rejected this argument and a district court " may constitutionally deny the reduction if the defendant's exercise of a constitutional right is inconsistent with acceptance of responsibility."  United States v. Portillo-Valenzuela, 20 F.3d 393, 395 (10th Cir. 1994).  Defendant exercised his right to a jury trial and put the government to its burden of proof , and the existence of a guideline reduction for acceptance of responsibility for defendants who plead guilty before trial does not show that defendant's constitutional rights were violated.

[6]     The firearm was a shotgun manufactured by Savage Arms in Westfield, Massachusetts, and did travel in interstate commerce before reaching Oklahoma.  See PSI, at 5; Dkt. # 139, at 2-9.

the gun may have moved in interstate commerce before § 922(g) was enacted, and defendant's argument is procedurally barred.  See Dkt. # 160, at 3-4.

The Court Improperly Enhanced Defendant's Sentence Using His Prior Convictions
(Grounds 3, 4, 12, 16, 21, 25, 30)

Defendant claims (Ground 3) that the Court improperly enhanced his sentence using a 1988 assault and battery conviction based on a nolo contendere plea and defendant did not admit to conduct constituting that offense, and the 1988 conviction for assault and battery should not have been treated as a predicate conviction under the ACCA.  The Tenth Circuit has not considered whether a conviction based on a nolo contendere plea may be treated as a predicate offense for application of the ACCA, but other federal courts of appeals have treated a nolo contendere plea as a guilty plea for the purpose of the ACCA, as long as the offense as charged would constitute a violent felony or drug trafficking crime under the ACCA.  See United States v. Day, 465 F.3d 1262, 1266 (11th Cir. 2006); United States v. Smith, 390 F.3d 661, 664 (9th Cir. 2004).  Defendant's prior nolo contendere plea was made in Oklahoma state court and, under Oklahoma law, "the legal effect of such plea shall be the same as that of a plea of guilty," except that the fact of a nolo contendere plea may not be used against a defendant in a subsequent civil case.  OKLA. STAT. tit. 22, § 513.  In this case, defendant pled nolo contendere to a charge of assault and battery with a dangerous weapon and was charged with assaulting an employee of the Oklahoma Department of Corrections with his handcuffs.  The crime of assault and battery with a dangerous weapon has five elements under Oklahoma law: 1) an assault and battery; 2) upon another person; 3) with a dangerous weapon; 4) without justification or excusable cause; and 5) with intent to do bodily harm.  Sherburn v. State, 787 P.2d 1282, 1284 (Okla. Crim. App. 1990).  This offense "has as an element the use, attempted use, or threatened use of physical force against the person . . . of another" and clearly qualifies as

28

a predicate offense under the ACCA.  18 U.S.C. § 924(e)(2)(B).  The fact that defendant entered a

nolo contendere plea to the charge of assault and battery has no effect on whether this conviction

may be treated as a violent felony under the ACCA, and appellate counsel was not ineffective for

failing to raise this meritless issue on appeal.

Defendant argues (Ground 4) that his appellate counsel was ineffective because appellate

counsel did not challenge the Court's failure to ask the jury to determine if his prior convictions

constituted violent felonies under the ACCA. However, defendant's underlying argument has been

rejected by the Tenth Circuit; the applicability of the ACCA is a question of law for the Court to

decide without submission of a defendant's prior convictions to a jury.  United States v. Moore, 401

F.3d 1220, 1224-25 (10th Cir. 2005) ("Because determining whether a given felony constitutes a

'violent felony' is a question of law and not fact, the Sixth Amendment does not require that

determination to be made by a jury.").  Therefore, appellate counsel was not ineffective for raising

this meritless issue on appeal.  Appellate counsel also raised this argument at defendant's sentencing

hearing and defendant did not challenge the Court's adverse ruling on direct appeal.   Thus,

defendant is procedurally barred from raising the issue in a § 2255 motion.

Defendant claims (Ground 12) that the Court improperly relied, in applying the ACCA, on

a 1975 conviction for robbery with a firearm that had been tainted by a prior, expunged juvenile

conviction.  However, he does not explain how his 1975 conviction for robbery with a firearm was

tainted or how this affects the application of the ACCA.  Defendant is correct that his criminal

history reflects a 1965 conviction for robbery with a firearm that was later vacated, but the 1965

conviction was not counted as a predicate offense under the ACCA, nor was the 1965 conviction

used to calculate defendant's criminal history category.  The 1975 conviction was based on a

29

separate robbery and has no apparent relationship to defendant's vacated 1965 conviction, and this Court and the Tenth Circuit rejected defendant's argument that the 1965 conviction tainted any of defendant's subsequent convictions. Dkt. # 150, at 15-17; Dkt. # 160, at 8-9. This argument has been fully litigated, and defendant may not reassert this issue in a § 2255 motion.

Defendant claims (Ground 16) that the Court erred by relying on the "unsubstantiated" factual allegations in the PSI, and appellate counsel failed to raise this issue on direct appeal. He claims that he was not interviewed as part of the preparation of the PSI and he was not convicted of many of the crimes listed in his criminal history. A district court is permitted to accept any uncontested facts contained in the PSI for the purpose of sentencing a defendant. See Fed. R. Crim. P. 32(i)(3)(A); United States v. Robertson, 568 F.3d 1203, 1214 (10th Cir. 2009). Defendant attempted to challenge the validity of certain convictions at his sentencing hearing, but he did not mention the specific convictions that he challenges in his § 2255 motion. See Dkt. # 151, at 8-17. In any event, neither his sentencing hearing nor a § 2255 motion is the appropriate forum to collaterally attack the constitutionality of state court convictions. Custis v. United States, 511 U.S. 485 (1994) (holding that "§ 924(e) does not permit [the defendant] to use the federal sentencing forum to gain review of his state convictions"). The Court did not err by accepting uncontested facts stated in the PSI for the purpose of determining defendant's sentence, including defendant's criminal history, and appellate counsel had no obligation to raise this meritless issue on appeal.

Defendant alleges (Ground 21) that his court-appointed trial attorneys failed to investigate the constitutionality of his prior convictions and they should have discovered that many of his convictions were tainted by a vacated 1965 conviction for robbery with a firearm. He acknowledges that he could not collaterally attack his prior state convictions when defending against a § 922(g)(1)

charge, but he claims that he was not asking his attorneys to collaterally attack any prior conviction. However, it is clear that he believes his attorneys should have challenged the constitutionality of his prior state convictions, and this would not have been permitted.  See Dkt. # 169, at 38-40.  Even assuming that defendant could challenge the performance of his court-appointed attorneys after electing to proceed pro se, the Court finds that any attempt to challenge the constitutionality of defendant's prior state convictions would not have been permissible, and he has not shown that any of his court-appointed attorneys were ineffective for failing to challenge the constitutionality of any of defendant's prior convictions.  In any event, appellate counsel raised the same argument on direct appeal and the Tenth Circuit rejected defendant's argument as an impermissible collateral attack on prior state court convictions.  Dkt. # 160, at 8-9.  Thus, defendant's ineffective assistance of counsel claim concerning the performance of his trial attorneys is meritless.

Defendant argues (Ground 25) that the Court erred by accepting the facts contained in the PSI when sentencing defendant, and that the Court erred by applying the advisory sentencing guidelines in a mandatory fashion.  The Court has already considered and rejected defendant's argument that the Court should not have relied on the facts stated in the PSI.  At defendant's sentencing hearing, the Court noted that the Sentencing Guidelines were advisory, and considered the Sentencing Guidelines and the factors under 18 U.S.C. § 3553(a) in sentencing defendant.  Dkt. # 151, at 39.  Defendant cites Gall v. United States, 552 U.S. 38 (2007), and Kimbrough v. United States, 552 U.S. 85 (2007), and suggests that the Court erred by sentencing him within the applicable guideline range.  While Gall and Kimbrough emphasize that the Sentencing Guidelines are advisory, Gall clearly states that a district court must first calculate the applicable guideline range before considering a non-guideline sentence, see Gall, 552 U.S. at 49-50, and defendant has made no

attempt to show that a non-guideline sentence would be appropriate. Even if a non-guideline sentence were appropriate, defendant would still be subject to a mandatory minimum sentence of 15 years under the ACCA, and neither <u>Gall</u> nor <u>Kimbrough</u> support defendant's request for a reduced sentence.

Defendant claims (Ground 30) that enhancing his sentence under the ACCA is the equivalent of sentencing him again for his prior crimes, and the sentencing scheme of the ACCA violates the Double Jeopardy Clause of the Fifth Amendment. However, defendant was not subject to multiple punishments for the same offense and the Double Jeopardy Clause does not apply. <u>United States v. Presley</u>, 52 F.3d 64, 68 (4th Cir. 1995); <u>United States v. Conner</u>, 886 F.2d 984, 985 (8th Cir. 1989). Therefore, the performance of appellate counsel was not constitutionally deficient for failing to raise this meritless issue on direct appeal.

<u>Denial of Defendant's Right to a Speedy Trial (Ground 8)</u>

Defendant claims that his right to a speedy trial was violated due to a 13 month gap between his initial appearance in federal court and his jury trial. He also claims that he was held in state custody from June to September 2003 without being arraigned, and this also violated his constitutional rights.[7] Defendant waived his right to assert a violation of the Speedy Trial Act, 18 U.S.C. § 3161, by failing to file a motion to dismiss before trial, and appellate counsel was not ineffective for declining to raise this meritless issue on appeal. 18 U.S.C. § 3162(a)(2); <u>United States v. Lugo</u>, 170 F.3d 996 (10th Cir. 1999). Defendant may be claiming that his constitutional

---

[7]     Even assuming that defendant's assertion concerning his pretrial confinement in state custody were true, he was transferred to federal custody on September 8, 2003, and made his initial appearance in federal court on the same day. Thus, this Court promptly took custody of defendant and notified defendant of the charges against him, and he has cited no authority suggesting that the pretrial procedures followed by Oklahoma state courts on a separate state charge would provide a basis to dismiss the federal charges against defendant.

right to a speedy trial was violated, but he would not prevail on such an argument. When considering a Sixth Amendment speedy trial claim, the Court must consider four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant." United States v. Toombs, 574 F.3d 1262, 1274 (10th Cir. 2009). Assuming that the length of the delay was prejudicial, the record reflects that defendant was responsible for any delay of his trial and this weighs heavily against finding that his right to a speedy trial was violated. Id. Defendant fired three court-appointed attorneys, voluntarily waived his right to a speedy trial by executing speedy trial waivers, filed numerous pretrial motions, and was responsible for any delay of jury trial. He did not assert his right to a speedy trial before trial, and he has not identified any prejudice from the delay. Therefore, he could not establish a constitutional speedy trial violation and appellate counsel had no duty to raise this meritless issue on appeal.

Insufficiency of Evidence or Use of False Evidence to Support Convictions (Grounds 9, 14, 23, 24)

Defendant raises four claims concerning the sufficiency of the evidence used to convict him at trial, and asserts that the government did not present sufficient evidence to obtain a conviction on Counts One or Two. Defendant also argues that the government presented false evidence at trial, and asks the Court to set aside his convictions. The government responds that defendant actually raised some of these issues on appeal and, if he did not raise certain insufficiency of the evidence claims, the claims are procedurally barred due to defendant's failure to raise them on direct appeal. The government also notes that defendant's claims that false evidence was used to obtain a conviction relate to Count Three, but Count Three was dismissed after the jury could not reach a verdict on that charge.

Defendant claims (Ground 9) that government failed to prove that the shotgun moved in interstate commerce before it was possessed by defendant.  On direct appeal, the Tenth Circuit held that the shotgun did move interstate commerce and defendant possessed it in 2002.  Dkt. # 160, at 4.  Thus, appellate counsel challenged the government's evidence concerning the movement of the shotgun in interstate commerce on direct appeal, and defendant's ineffective assistance of appellate counsel claim is meritless.

Defendant argues (Ground 14) that the Court should have entered a judgment of acquittal as to Count Two, because he pawned the shotgun and the pawn shop, rather than defendant, actually possessed the shotgun.  Count Two of the superseding indictment charged defendant with making a false statement during the purchase of a firearm, and the government alleged that defendant lied about his criminal history when attempting to purchase a firearm.  To convict defendant for making a false statement when attempting to purchase a firearm, the jury was required to find beyond a reasonable doubt that (1) defendant knowingly made a false statement; (2) the statement was intended to deceive or likely to deceive a licensed firearms dealer; and (3) the false statement was a material fact to the lawfulness of the sale or disposition of the firearm.  Dkt. # 160, at 6.  It was not necessary for the jury to find that defendant possessed the shotgun at the time he made the false statement, because Count Two charged defendant with attempting to <u>obtain</u>, not possess, a firearm by means of a false statement.  This argument is meritless and appellate counsel was not constitutionally deficient for raising this issue on appeal.

Defendant asserts (Grounds 18, 23, and 24) that the government presented "manufactured" evidence and false testimony at trial.  Dkt. # 169-2, at 8-13.  All three claims concern defendant's contention that his driver's license was not under suspension at the time he was arrested, and he

34

states that Officers Moyer and Sherill, in conspiracy with the AUSA, presented false evidence at trial. Even if defendant were correct about the status of his license, this does not provide a basis to set aside his convictions. The allegedly false evidence was presented at trial in support of Count Three, but the jury did not reach a verdict on Count Three and the government agreed to dismiss this charge. Thus, defendant suffered no prejudice and Grounds 18, 23, and 24 are denied.

Denial of Right to Fair Trial (Grounds 10, 11, 15, 29)

Defendant claims (Ground 10) that he was prejudiced by the racial composition of the jury pool for the Northern District of Oklahoma, and the Court improperly excluded members of the National Rifle Association (NRA) from the petit jury. Defendant appears to argue that the jury pool did not contain a fair cross section of the community. To prevail on such a claim, a criminal defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury selection process.

United States v. Orange, 447 F.3d 792, 797 (10th Cir. 2006). Defendant's conclusory allegations concerning the racial composition of the jury pool do not satisfy any of these elements. Defendant also claims that the Court excluded potential jurors based solely on the potential juror's membership in the NRA or other similar groups. While the Court asked about each potential juror's membership in such organizations, the Court did not exclude the one potential juror who stated that he belonged to the NRA, because the potential juror stated that he could fairly and impartially consider the evidence. Dkt. # 143, at 72-73.

Defendant argues (Ground 11) that he was deprived of a fair trial, because he was required to stipulate to the fact of a prior felony conviction or have the full list of prior convictions alleged in the superseding indictment read to the jury.  Defendant's status as a convicted felon was an element of the offenses charged in Counts One and Three, and the government was required to prove beyond a reasonable doubt that defendant had been convicted of a felony.  Defendant exercised his right under Old Chief v. United States, 519 U.S. 172 (1997), to stipulate to the fact of a prior felony conviction to avoid any prejudice that might be caused by informing the jury of all of his prior felony convictions.  Defendant was not forced to enter an Old Chief stipulation and, given defendant's lengthy criminal history, it is reasonable to assume that he received some benefit by stipulating to the fact of a prior felony conviction.  Old Chief is settled law and it is clearly designed to protect a criminal defendant from any unfair prejudice that might by reading a defendant's criminal history to the jury.  Appellate counsel had no obligation to raise this meritless issue on appeal.

Defendant argues (Ground 15) that he was denied a fair trial because the Court failed to order separate trials for charges concerning criminal acts that occurred at different times.  Defendant filed a motion (Dkt. # 63) to sever the trial of Counts One and Two from the trial of Count Three, and his motion was denied.  See Dkt. # 74.  Defendant did not challenge the denial of his motion to sever on direct appeal, and he is procedurally barred from raising this issue in a § 2255 motion.  Even if the Court were to consider this issue, defendant has not shown that he suffered any prejudice from a joint trial on all pending charges.  When relying on the denial a motion to sever as a basis to overturn a conviction, a criminal defendant faces a "heavy burden" and he must show "real prejudice" from the denial of a motion to sever.  United States v. Wardell, 581 F.3d 1272 (10th Cir.

36

2009). In this case, the jury was not able to reach a verdict as to Count Three and the government subsequently dismissed the charge. It is clear that the jury was able to keep the events giving rise to Count Three separate from the evidence pertaining to Counts One and Two, and defendant was not prejudiced by a single trial on all charges against him.

Defendant claims (Ground 29) that he was denied a fair trial when the Court and standby counsel encouraged Mulrain not to testify at trial. The Court has considered defendant's argument that Mulrain was discouraged from testifying and rejected his claim that it was improper to appoint counsel for Mulrain. Defendant has not provided any new argument on this issue, and Ground 29 is rejected as a basis for relief.

Appellate Counsel Failed to Communicate with Defendant (Ground 19)

Defendant argues that appellate counsel refused to regularly communicate with defendant, and appellate counsel did not raise certain arguments on direct appeal as requested by defendant. Defendant claims that he sent correspondence to appellate counsel and asked that certain issues be raised on appeal, but he did not receive a response. The exhibits attached to defendant's § 2255 motion show that he sent his correspondence to the wrong address, and appellate counsel notified defendant of this error after the Court provided appellate counsel a copy of a letter that defendant sent to the Court. Dkt. # 169, at 29. Appellate counsel has submitted an affidavit stating that he exercised his "professional judgment" not to raise many of the issues identified by defendant because the issues "were entirely without merit," and he raised any issue that he believed was meritorious. Dkt. # 182, Ex. A, at 3. He refrained from raising non-meritorious issues to avoid the appearance of taking a "shotgun" approach to appellate litigation. Id. This shows that appellate counsel considered defendant's request to raise numerous issues on appeal, and exercised his

professional judgment when selecting what issues to raise on direct appeal.  The Court also notes that defendant asked appellate counsel to raise many of the arguments asserted in defendant's § 2255 motion, and appellate counsel reasonably concluded that many of the issues lacked merit.  There is no evidence that appellate counsel refused to communicate with defendant or ignored defendant's request to raise issues on direct appeal, and the Court finds that appellate counsel's performance was reasonable.

The Search Conducted on October 30, 2001 Was Unconstitutional (Ground 20)

Defendant claims that the search of his vehicle on October 30, 2001 was unconstitutional and evidence seized during the search.  Defendant is procedurally barred from raising this issue in a § 2255 motion, because it was not raised on direct appeal.  Even if the Court were to consider this claim, defendant could not show prejudice from the denial of his motion to suppress.  The evidence seized during the October 30, 2001 search of defendant's vehicle related to Count Three of the superseding indictment, and this count was dismissed after the jury could not reach a verdict.  Thus, defendant was not prejudiced by the denial of his motion to suppress.

Counsel and the Court Failed to Advise Defendant of his Possible Sentence (Ground 27)

Defendant argues that he was not advised of the possible statutory minimum and maximum sentences for the charges against him, and he would have conducted his defense differently if he had known this information.  He claims that he could have "taken" the offense charged in Count Two, which carried a statutory maximum sentence of ten years, and structured his defense to avoid a guilty verdict on Count One, which carried a statutory mandatory minimum sentence of 15 years. Defendant assumes that the government would have offered him a plea agreement or dismissed Count One if he agreed to enter a guilty plea as to Count Two, or he assumes that he would have

38

been acquitted of Count One if he had confessed guilt as to Count Two.  Neither assumption is reasonable.  Defendant has not alleged that the government offered a plea agreement that would have allowed him to change his plea as to Count Two only, and the government denies that such a plea agreement was offered.  Dkt. # 169-2, at 18-19; Dkt. # 182, at 46.  It is also not reasonable to assume that defendant would have been acquitted of Count One, because he was actually convicted of Count One by the jury and the Tenth Circuit found that the government presented sufficient evidence to sustain that conviction.  Dkt. # 160, at 2-3.  Defendant has not shown that his knowledge or alleged lack of knowledge of the statutory minimum and maximum sentences affected the outcome of the trial, and appellate counsel was not constitutionally deficient for failing to raise this issue on appeal.

**IT IS THEREFORE ORDERED** that defendant's Motion for New Trial and Reconsideration on Newly Discovered Evidence and Supporting Evidence (Dkt. # 164) and Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Dkt. # 169) are **denied**.  A separate judgment is entered herewith.

**DATED** this 22nd day of January, 2010.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT